# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

ERIC LUCHETTI,

       Plaintiff,

v.                                                                                                                                                No. CIV 20-1232 RB/JFR

THE NEW MEXICO STATE PERSONNEL BOARD, aka
THE NEW MEXICO STATE PERSONNEL OFFICE, a state
agency, and JUSTIN NAJAKA, former Director of the State
Personnel Board, individually, and PAMELA COLEMAN,
current Director of the State Personnel Office and current
Chair of the State Personnel Board, and ROBERT ROJO,
Team Lead of Employee Relations Department, individually,

and

THE NEW MEXICO CORRECTIONS DEPARTMENT, aka
THE NEW MEXICO DEPARTMENT OF CORRECTIONS, a
state agency, and former Acting Secretary MELANIE MARTINEZ,
current Secretary ALISHA TAFOYA-LUCERO, and Deputy
Director GERMAN FRANCO, individually,

       Defendants.

## MEMORANDUM OPINION AND ORDER

In 2016 the New Mexico Department of Corrections (DOC) terminated Plaintiff Eric Luchetti as an employee. Luchetti successfully appealed the discharge to the New Mexico State Personnel Board (SPB). Luchetti was reinstated and received an award of back pay, but according to state regulations, this amount was offset by earnings Luchetti received from social security disability benefits, unemployment compensation, and other income during the period between his termination and reinstatement. Luchetti appealed the back pay award in state court, which affirmed the award. Luchetti did not timely appeal the state court decision, but instead filed a second complaint in state court to add certain state and federal claims. Defendants removed the second

lawsuit to this Court and now move to dismiss Luchetti's lawsuit. As discussed below, the Court will dismiss Luchetti's federal law claims and remand the remaining claims to the state court.

**I.     Statement of Facts**

Luchetti, a resident of Santa Fe County, New Mexico, worked full-time at the DOC. (Doc. 23 (2d Am. Compl.) ¶¶ 2, 6.) The DOC terminated Luchetti's employment in 2016. (*Id.* ¶ 6.) Luchetti filed a charge of discrimination form with the New Mexico Human Rights Bureau, alleging that the termination was related to a documented disability and thus constituted discrimination. (*Id.*) Luchetti had previously been determined disabled and received benefits from the Social Security Administration (SSA). (*Id.* ¶ 2.) Luchetti successfully appealed his termination to the SPB and later dismissed his charge of discrimination. (*Id.* ¶ 6.)

Pursuant to N.M. Stat. Ann. § 10-9-18(F), the SPB reinstated Luchetti to his position with the DOC on December 4, 2017, and awarded back pay. (*Id.* ¶ 7.) Pursuant to N.M. Code R. § 1.7.12.23(B),[1] the SPB offset the back pay award by over $36,000, which represented (in relevant part) amounts Luchetti received in disability payments from the SSA and unemployment compensation from the state during the pendency of his appeal. (*Id.* ¶¶ 5, 9, 17.) The SPB awarded $6,889.12 in back pay, and Luchetti appealed the award to the state district court. (*See id.* ¶¶ 7–8.) *See also Luchetti v. N.M. State Pers. Bd.*, D-101-CV-201901846, Notice of Appeal (1st Jud. Dist.

---

[1] N.M. Code R. § 1.7.12.23 provides:
   A. The board may order agencies to reinstate appellants with back pay and benefits. Such appellants shall be reinstated to their former position, or to a position of like status and pay, that they occupied at the time of the disciplinary actions.
   B. In the event the board's order includes any back pay, the appellant shall provide the agency with a sworn statement of gross earnings, unemployment compensation, and any other earnings, including but not limited to disability benefits received by the appellant since the effective date of the disciplinary action. The agency shall be entitled to offset earnings, unemployment compensation and any other earnings received during the period covered by the back pay award against the back pay due. The hearing officer shall retain jurisdiction of the case for the purpose of resolving any disputes regarding back pay.

N.M. July 12, 2019). In his original appeal to the state court, Luchetti named only the SPB as a defendant and asserted a claim that "questioned the validity of the [SPB's] regulation, [Rule] § 1.712.23(B) (the regulation governing offsets to back pay awards), as being beyond the authority granted under N.M. Stat. Ann. § 10-9-18(F)." (Doc. 30 at 3 (citing *Luchetti*, D-101-CV-201901846, Notice of Appeal, at *2–3).) Luchetti moved to amend his appeal to add defendants and claims under the Fraud Against Taxpayers Act (FATA), N.M. Stat. Ann. §§ 44-9-1–14, the Whistleblower Protection Act (WPA), N.M. Stat. Ann. §§ 10-16C-1–6 (2010), and the New Mexico Human Rights Act (HRA), N.M. Stat. Ann. §§ 28-1-1–14. *See Luchetti*, D-101-CV-201901846, Mot. for Leave to File 1st Am. Notice of Appeal (1st Jud. Dist. N.M. July 26, 2019). The state court allowed Luchetti to add the defendants, but it denied his request to add new claims. *See id.*, Order Gr. in Part, Den. in Part, Pet'r's Mot. for Leave to File 1st Am. Notice of Appeal (1st Jud. Dist. N.M. Jan. 14, 2020).

On May 12, 2020, Luchetti filed a sealed Complaint for Damages in state district court. *Luchetti v. N.M. State Pers. Bd.*, D-101-CV-2020-01056, Compl. (1st Jud. Dist. N.M. May 12, 2020). He did this as a work-around to add the claims the state court denied in his first case, as the two-year statute of limitation was about to run on his claim under the WPA. (*See* 2d Am. Compl. ¶ 8.) In his initial complaint in the second case, he omitted the claim under the HRA and added a claim under the New Mexico Tort Claims Act (NMTCA), N.M. Stat. Ann. §§ 41-4-1–30. (*See* Doc. 9-1 at 16–17.) Luchetti later filed an amended complaint in his second case, adding federal claims under 42 U.S.C. §§ 1983 and 1985(3). (*See id.* at 19, 37–43.) Defendants thereafter removed the second lawsuit, D-101-CV-2020-01056, to this Court on November 25, 2020. (Doc. 1.)

Luchetti has since filed a Second Amended Complaint and asserts the following claims: <u>Count I</u>: violation of the FATA against all Defendants; <u>Count II</u>: violation of the WPA against the

Agency Defendants (the State Personnel Office (SPO) and the DOC); <u>Count III</u>: civil conversion under § 41-4-6 of the NMTCA against all Defendants; <u>Count IV</u>: discrimination on the basis of disability and retaliation for protected first amendment speech in violation of the First and Fifth Amendments, the Equal Protection Clause of the Fourteenth Amendment, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–17, pursuant to 42 U.S.C. § 1983 against all Individual Defendants,[2] and for injunctive relief against the SPO and DOC; and <u>Count V</u>: retaliation against all Individual Defendants pursuant to 42 U.S.C. § 1985(3). (*See* 2d Am. Compl. at 13–24.)

Defendants have filed two motions to dismiss: one regarding Luchetti's state claims (Doc. 30), and one regarding his federal claims (Doc. 31; *see also* Docs. 57–58 (Rojo's notices of joinder).) The Court will grant the motion to dismiss the federal claims and remand the state claims.

**II.     Legal Standards**

    **A.     Motion to Dismiss**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Emps.' Ret. Sys. of R.I. v. Williams Cos.*, 889 F.3d 1153, 1161 (10th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quotation omitted). The Court will "accept as true 'all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff.'" *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013) (quotation omitted).

---

[2] Luchetti refers to Martinez, Tafoya-Lucero, Franco, Najaka, Coleman, and Rojo as the "Individual Defendants." (*See* 2d Am. Compl. ¶ 2.)

    **B.**    **Judicial Notice**

"[W]hile ordinarily, a motion to dismiss must be converted to a motion for summary judgment when the court considers matters outside the complaint, *see* Fed. R. Civ. P. 12(d), matters that are judicially noticeable do not have that effect . . . ." *Genesee Cty. Emps.' Ret. Sys. v. Thornburg Mortg. Sec. Tr. 2006-3*, 825 F. Supp. 2d 1082, 1122 (D.N.M. 2011) (citation omitted). Here, the Court takes judicial notice of materials from the related state cases in deciding the motions to dismiss. *See Pace v. Swerdlow*, 519 F.3d 1067, 1072 (10th Cir. 2008) (finding that "district court was correct in considering [the state court's file] on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)").

**III.**    **Luchetti concedes to dismissal of the claim brought under § 1985 as to all Defendants and of the claim brought under § 1983 as to the SPB and the DOC.**

In their motion to dismiss Luchetti's federal claims, Defendants assert that the claims brought against the SPB and DOC under 42 U.S.C. §§ 1983 and 1985 are improper and must be dismissed. (Doc. 31 at 5.) "The Eleventh Amendment to the United States Constitution bars suits in federal court for damages against states, state agencies, and state officials in their official capacities unless the state unequivocally waives its immunity or Congress expressly abrogates the immunity by creating a statutory cause of action." *Derringer v. Denko*, No. CV 03-0290 MCA/LAM, 2003 WL 27384757, at *3 (D.N.M. Dec. 22, 2003), *aff'd*, 126 F. App'x 901 (10th Cir. 2005) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 97–102 (1984)). A plaintiff may not file suit against state agencies unless the state has waived its immunity, and Luchetti does not argue that New Mexico waived its immunity for his claims against the agency defendants under §§ 1983 and 1985. *See id.*; *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002). (*See also* Doc. 42.) "[T]he United States Supreme Court and the Tenth Circuit have

determined that Congress' passage of 42 U.S.C. §§ . . . 1983 [and] 1985 . . . did not abrogate the state's sovereign immunity." *Derringer*, 2003 WL 27384757, at *3 (citations omitted). Further, state agency defendants are not "persons" for purposes of claims under § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). The Tenth Circuit has opined that the same concerns underlying claims against state officials under § 1983 also apply to claims under § 1985. *Bisbee v. Bey*, 39 F.3d 1096, 1101 (10th Cir. 1994).

Luchetti concedes that his claims against the SPB and the DOC under §§ 1983 and 1985 are improper. (*See* Doc. 42 at 23.) He goes one step further and admits that his entire claim under § 1985 is improper, as that section "is limited to conspiracies with some claim of racial bias." (*Id.*) *See also United Bhd. of Carpenters & Joiners of Am., Loc. 610, AFL-CIO v. Scott*, 463 U.S. 825, 836 (1983) (noting that "it is a close question whether § 1985(3) was intended to reach any class-based animus other than animus against Negroes and those who championed their cause"); *Martinez v. N.M. Dep't of Health*, No. CIV 404-1326 JB/RLP, 2006 WL 4079690, at *7 (D.N.M. Dec. 4, 2006) (noting that "[t]he Tenth Circuit has consistently dismissed § 1985(3) claims devoid of racial, discriminatory animus"). As Luchetti has conceded to dismissal of these claims, the Court will dismiss Count IV as to the SPB and the DOC and Count V in its entirety.

**IV. The Court will dismiss the claim brought under 42 U.S.C. § 1983 against the Individual Defendants.**

In Count IV, Luchetti alleges that the Defendants' actions in promulgating and enforcing Rule § 1.7.12.23(B), which he contends "facially and without rational basis discriminates against persons with disabilities" and "retaliates against persons who have properly appealed their terminations to the SPO and won[,]" violated his constitutional and statutory rights. (2d Am.

6

Compl. ¶¶ 40–41.) Luchetti advances novel theories to hold Defendants[3] liable under § 1983. As best the Court can make out, Luchetti claims: (1) Defendants took his property in violation of the Fifth and Fourteenth Amendments and Title VII by reducing his back pay award by amounts he received via disability and unemployment benefits; and (2) Defendants retaliated against him for exercising his right to petition the government for his wrongful termination by reducing his back pay award in violation of the First Amendment. (*See id.* ¶¶ 37–47; Doc. 42.) Defendants argue that they are entitled to qualified immunity because their conduct did not violate Luchetti's constitutional or statutory rights, and even if it did, there was no clearly established law to put them on notice that their conduct violated his rights. (*See* Doc. 31 at 7–14.)

"In assessing a qualified immunity defense" in the context of a motion to dismiss, the Court "must determine whether the plaintiff pled facts indicating: (1) the defendant violated a statutory or constitutional right and (2) that right was 'clearly established' at the time of the challenged conduct." *Crall v. Wilson*, 769 F. App'x 573, 575 (10th Cir. 2019) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). Courts may address the prongs of this analysis in either order; if the plaintiff fails to meet his burden on either prong, the defendant prevails. *See Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir.), *cert. denied*, *Cummings v. Bussey*, 140 S. Ct. 81 (2019); *see also al-Kidd*, 563 U.S. at 735 (noting that "courts have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first") (citation omitted). "Courts should think carefully before expending scarce judicial resources to resolve difficult and novel questions of constitutional or statutory interpretation that will have no effect on the outcome of the case." *Al-Kidd*, 563 U.S. at 735 (quotation marks and citation omitted). Here, the Court finds that Luchetti largely fails to

---

[3] When discussing the parties' arguments regarding qualified immunity, the Court's references to "Defendants" refers specifically to the Individual Defendants—Martinez, Tafoya-Lucero, Franco, Najaka, Coleman, and Rojo.

make out a violation of his constitutional or statutory rights. Even if he had, he has not demonstrated that clearly established law put Defendants on notice that their conduct in promulgating and/or enforcing Rule § 1.7.12.23(B) violated his rights. Nor has Luchetti developed any cogent argument that Defendants' conduct here so obviously violated a constitutional or statutory right "that it is not necessary for [him] to show clearly established existing law prohibiting such conduct." *See Estate of Ceballos v. Husk*, 919 F.3d 1204, 1218 (10th Cir. 2019).

    **A.**    **Luchetti has not shown clearly established law that put Defendants on notice that their conduct violated his rights under the Fifth or Fourteenth Amendments or Title VII.**

Luchetti first asserts that he "had a well-established property right conferred by New Mexico common law" in his full back pay award. (Doc. 42 at 10.) Luchetti argues that Defendants violated his rights under the Fifth and Fourteenth Amendments and Title VII because the promulgation and enforcement of Rule § 1.7.12.23(B) discriminated against him and denied him equal protection of the laws by offsetting his back pay award by the amount of social security benefits he received due to his disability. (2d Am. Compl. ¶¶ 39, 44; Doc. 42 at 7–18.)

Defendants do not argue that Luchetti has failed to establish a property right in his back pay and/or benefits. (*See* Doc. 51 at 3.) Instead, they argue that Luchetti fails to cite authority that clearly established that offsetting his back pay award pursuant to Rule § 1.7.12.23(B) violated his constitutional or statutory rights. (*See id.* at 3–4.) For his part, Luchetti does not even attempt to show how the facts as alleged in his Second Amended Complaint make out a prima facie claim for denial of equal protection or discrimination under the Fifth or Fourteenth Amendments or Title VII. (*See generally* Doc. 42.) Instead, Luchetti copies and pastes block quotes from several cases without applying the law to the facts of his own claims. The Court declines to address the elements of his § 1983 claims on his behalf and instead turns to the second prong of the qualified immunity

analysis—whether the law was clearly established.

Luchetti asserts that *Copelin-Brown v. New Mexico State Personnel Office*, 399 F.3d 1248 (10th Cir. 2005) both directs a finding that Rule § 1.7.12.23(B) violates his rights and provides clearly established law for his equal protection claim. (*See* Doc. 42 at 15–16.) In *Copelin-Brown*, employees of the SPO challenged N.M. Code R. § 1.7.11.10, a regulation that "applied only to employees who [were] physically or mentally unable to perform their jobs" and provided that such employees who were terminated due to disability did not have the right to an appeal. *See* 399 F.3d at 1252. The regulation applicable to non-disabled employees allowed for an appeal. *See id.* The Tenth Circuit found that the regulation violated the disabled employees' right to equal protection because there was no rational basis for the SPO to treat disabled employees differently. *Id.* at 1255–56. The defendants, SPO directors and supervisors, argued they were entitled to qualified immunity because they were following a regulation. *Id.* at 1256. The Tenth Circuit disagreed, noting that whether defendants followed a regulation is but one factor to consider in deciding whether conduct was objectively reasonable. *Id.* (citing *Roska v. Peterson*, 328 F.3d 1230, 1252–53 (10th Cir. 2003)). It held that the defendants had "expertise in the hiring and firing of state employees" and in "relevant state and federal law" that had for decades required that the state "provide an opportunity for a hearing whenever a permanent state employee is terminated." *Id.* (citation omitted). Consequently, the court found that the law was "clearly established and a reasonable director or supervisor of the state SPO would have known that his or her activity violated Ms. Copelin-Brown's constitutional rights." *Id.* at 1257.

*Copelin-Brown* is not on point. Luchetti contends that Rule § 1.7.12.23(B) "reaches out to specifically identify disabled persons[] and their disability benefits as a specific target of their off-set rule . . . ." (Doc. 42 at 15.) Yet, Rule § 1.7.12.23(B) dictates only that an appellant shall *disclose*

earnings (including social security benefits) and provides that the agency is *entitled* to offset earnings against any back pay due. The Rule does not require the agency to offset back pay with any one type of earning. *Copelin-Brown* neither dictates a finding that the regulation here discriminates against disabled individuals nor provides clearly established law that would put Defendants on notice that their conduct violated Luchetti's constitutional or statutory rights.

Luchetti also heavily relies on the collateral source rule, a New Mexico common law rule of evidence, which provides that "[c]ompensation received from a collateral source does not operate to reduce damages recoverable from a wrongdoer." *Pipkins v. TA Operating Corp.*, 466 F. Supp. 2d 1255, 1258 (D.N.M. 2006) (quoting *Trujillo v. Chavez*, 76 N.M. 703, 417 P.2d 893, 897 (1966)). In other words, the collateral source rule allows a plaintiff to "recover 'his full losses from the responsible defendant, even though he may have recovered part of his losses from a collateral source.'" *Id.* (quoting *McConal Aviation, Inc. v. Com. Aviation Ins. Co.*, 799 P.2d 133, 136 (1990)); *see also Sunnyland Farms, Inc. v. Cent. N.M. Elec. Coop., Inc.*, 301 P.3d 387, 400–01 (N.M. 2013) (discussing rule).

Luchetti argues that the decision in *Smith v. FDC Corp.*, 787 P.2d 433 (N.M. 1990) clearly establishes his right to his full back pay award. (Doc. 42 at 8–9.) In that case, an employee sued his employer for age and race discrimination under the NMHRA. *Smith*, 787 P.2d at 435. The district court found in Smith's favor and awarded damages and FDC appealed, arguing that the damages award should have been offset by amounts Smith earned through public assistance and social security. *Id.* at 436, 439. The New Mexico Supreme Court determined that "[p]ublic assistance and social security constitute benefits from a collateral source, and they are not subject to offset from an award of damages." *Id.* at 440 (citations omitted). It reasoned that these public sources of "subsistence income do not constitute a windfall such that they should be offset against

a damage award, especially when considered in light of the discriminatory activities of FDC that forced Smith and his family onto the public dole." *Id.* Yet, *Smith* is distinguishable and cannot provide authority to overcome the qualified immunity defense. First, *Smith* involved a private corporate employer and a damages award under the HRA. The employer here is a state agency, and damages were awarded pursuant to a state regulation. Neither Luchetti nor the Court has found a case that discusses the collateral source rule in the context of a termination/reinstatement by a state employer under N.M. Stat. Ann. § 10-9-18(F) or Rule § 1.7.12.23(B). More importantly, *Smith* does not stand for the proposition that state actors who offset a back pay award with amounts from collateral sources in violation of the collateral source rule violate the state employee's constitutional or statutory rights. The *Smith* decision simply affirmed the district court's decision declining to offset a damages award by amounts the plaintiff received from public assistance and the SSA. *See id.*

Luchetti next cites UJI 13-851 NMRA to argue that clearly established law put Defendants on notice that their conduct violated his rights. (*See* 2d Am. Compl. at 2; Doc. 42 at 7.) This jury instruction is relevant to a claim for damages that "arises from breach of an employment contract" and provides that damages consist of "[t]he unpaid balance of the contract price, less . . . the amount actually earned from other employment in the time made available as a result of the breach . . . ." UJI 13-851 NMRA and Use Note (brackets and blank omitted). Again, however, Luchetti has not offered any authority that mandates the use of UJI 13-851 in actions related to appeals from SPB decisions. Moreover, it appears that the New Mexico Court of Appeals has explicitly determined that damage awards rendered in SPB proceedings are *not* subject to the same remedies as other breach-of-employment-contract cases. In *Barreras v. State of New Mexico Corrections Department*, the New Mexico Court of Appeals was called upon to determine whether a state

11

employee, who was wrongfully discharged from employment with the DOC, "may elect to bypass an administrative appeal to the [SPB], and instead file a lawsuit directly in district court on a theory of breach of implied contract of employment based on" the State Personnel Act (SPA). 62 P.3d 770, 772 (N.M. Ct. App. 2002). The *Barreras* court found that "the employee's remedies are limited to those set forth in the [SPA]"—which would include those found in Rule § 1.7.12.23(B). *See id.* In reaching its decision, the *Barreras* court noted that "the relief afforded in the [SPA] mirrors the core of what is ordinarily available as compensatory damages in a breach-of-employment-contract lawsuit." *Id.* at 774 (citing N.M. Stat. Ann. § 10-9-18(F)). The court acknowledged that while a "successful claimant" in a breach-of-employment-contract action "may win compensatory damages[,]" *id.* (citation omitted), an employee appealing an adverse employment action under the SPA is not entitled to general compensatory damages, *id.* (citing § 10-9-18(F)). It went on to opine that "[t]o the extent that remedies under the [SPA]" are "less than what an aggrieved employee might recover in court, such restrictions reflect a legislative effort to balance the economic security needs of public employees with prudential considerations for protecting the public treasury."[4] *Id.* The *Barreras* decision cuts against a finding that the Defendants here were on notice that following Rule § 1.7.12.23(B)'s language, which explicitly allows for offset of "unemployment compensation and any other earnings received[,]" would violate Luchetti's constitutional or statutory rights.

The Supreme Court has opined that "'clearly established law' should not be defined 'at a high level of generality.'" *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (quoting *al-Kidd*, 563 U.S. at 742). Instead, it "must be 'particularized' to the facts of the case." *Id.* (quoting *Anderson v.*

---

[4] In its order affirming the SPB's decision in this matter, the state district court relied on *Barreras* and opined that the SPB "was authorized to promulgate a rule calling for offsets against back pay, as they did in [Rule] § 1.7.12.23(B)." *See Luchetti*, No. D-101-CV-2019-01846, Ord. on NMRA § 1-074 Appeal, at *6 (1st Jud. Dist. N.M. June 9, 2020).

*Creighton*, 483 U.S. 635, 640 (1987)). "Otherwise, '[p]laintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.'" *Id.* (quoting *Anderson*, 483 U.S. at 639). Luchetti has not cited any clearly established law that would put Defendants on notice that their conduct, as described in Luchetti's Second Amended Complaint, would violate his rights under the Fifth or Fourteenth Amendments or Title VII.

### B. Luchetti fails to show clearly established law that Defendants' conduct violated his First Amendment rights.

Luchetti next contends that offsetting his back pay award under Rule § 1.7.12.23(B) violated his right to petition the government for redress of grievances. (2d Am. Compl. ¶¶ 42–44;[5] Doc. 42 at 10.) To establish such a claim, Luchetti "must show that (a) he . . . was engaged in constitutionally protected activity; (b) [Defendants'] actions caused [him] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (c) [Defendants'] adverse action was substantially motivated as a response to [Luchetti's] exercise of constitutionally protected conduct." *Van Deelen v. Johnson*, 497 F.3d 1151, 1155–56 (10th Cir. 2007) (citing *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000)). Luchetti argues that the regulation "penalizes disabled state employees who were terminated wrongfully" by imposing a penalty on them—the offset of disability benefits—for appealing a wrongful termination. (Doc. 42 at 11.) Even assuming that Luchetti can make out a prima facie claim for retaliation under the First Amendment, the question becomes whether he has shown authority that would put Defendants on

---

[5] Luchetti also asserts that his speech touched on matters of "public concern." (2d Am. Compl. ¶ 43.) It is unclear whether he makes this statement to establish one element of the *Garcetti/Pickering* test, which courts apply "[t]o determine if an employer's adverse employment action against an employee is an impermissible retaliation under the First Amendment . . . ." *Knopf v. Williams*, 884 F.3d 939, 945 (10th Cir. 2018) (citations omitted). Again, however, Luchetti fails to cite precedent that shows any alleged violation of the First Amendment under this test was clearly established at the time of Defendants' conduct.

notice that the promulgation/enforcement of Rule § 1.7.12.23(B) violated his rights under the First Amendment. He has not.

Luchetti cites two cases to show that the law on this issue was clearly established: *Minneapolis Star & Tribune Co. v. Minnesota Commissioner of Revenue*, 460 U.S. 575 (1983), and *Simon & Schuster, Inc. v. Members of the New York State Crime Victims Board*, 502 U.S. 105 (1991). (*See* Doc. 42 at 11–13.) In *Minneapolis Star & Tribune*, the Supreme Court found that the state had improperly "singled out the press" on which to impose a special "use tax" on paper and ink products. 460 U.S. at 578, 582. Luchetti argues that Rule § 1.7.12.23(B) singles out employees who appeal their terminations to the SPB. (Doc. 42 at 12.)

In *Simon & Schuster*, the Supreme Court found that a state law, which "require[d] that an accused or convicted criminal's income from works describing his crime be deposited in an escrow account" to be "made available to the victims[,]" imposed an unlawful financial burden based on the content of the speech. 502 U.S. at 108, 115–16. Luchetti argues that Rule § 1.7.12.23(B) also imposes a financial burden based on the content of speech—*i.e.*, the regulation allows the state to offset back pay from an employee who has appealed a wrongful termination.

These cases refer only to general statements of the law; they are not particularized to the facts of this lawsuit. Luchetti fails to cite "existing precedent [that has] placed the statutory or constitutional question beyond debate." *White*, 137 S. Ct. at 551 (quotation omitted).

In sum, the Court finds that because Luchetti fails to cite authority that clearly establishes the Individual Defendants' conduct, as described in the Second Amended Complaint, violated his constitutional or statutory rights, they are entitled to qualified immunity on the claims brought under 42 U.S.C. § 1983.

**V.     Because the Court dismisses Luchetti's constitutional claims, it declines to exercise supplemental jurisdiction over the remaining claims and will remand the lawsuit.**

In addition to his federal claims, Luchetti brought claims under the FATA, the WPA, and the NMTCA. (2d Am. Compl. ¶¶ 22–36.) Defendants removed the lawsuit pursuant to 28 U.S.C. §§ 1331 and 1441(a) on the basis of federal question jurisdiction. (*See* Doc. 1 at 2–3.) "Under 28 U.S.C. § 1367(c)(3), '[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction.'" *Sabeerin v. Fassler*, No. 1:16-CV-00497 JCH-LF, 2021 WL 1227726, at *8 (D.N.M. Apr. 1, 2021). Because the Court dismisses the federal claims and the remaining claims are based entirely on state law, the Court will remand this proceeding to state court for adjudication of those claims.

      **THEREFORE,**

      **IT IS ORDERED** that Defendants' Motion to Dismiss Plaintiff's Federal Claims (Counts IV and V) (Doc. 31) is **GRANTED**. Luchetti voluntarily dismissed his claim under § 1983 against the SPB and the DOC and his claim under 42 U.S.C. § 1985 against all Defendants. Luchetti fails to show that the law was clearly established on his remaining § 1983 claims, and the Individual Defendants are entitled to dismissal on the basis of qualified immunity on Count IV and this claim is dismissed;

      **IT IS FURTHER ORDERED** that because the Court declines to exercise supplemental jurisdiction over Luchetti's remaining state law claims, Defendants' Motion to Dismiss Plaintiff's State Law claims (Counts I–III) is **DENIED AS MOOT**;

**IT IS FURTHER ORDERED** that this matter is **REMANDED** to the First Judicial District Court, County of Santa Fe, State of New Mexico.

_____
ROBERT C. BRACK
SENIOR U.S. DISTRICT JUDGE

16